**Proctor GRAY, III, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 84S00–9102–CR–156.**

Supreme Court of Indiana.

June 18, 1992.

Rehearing Denied Sept. 9, 1992.

Brent Westerfeld, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Burglary, a Class B felony, for which he received a sentence of twenty (20) years, and Murder, for which he received a sentence of sixty (60) years, the sentences to run consecutively.

The facts are: The body of Flossie Hunt was discovered by her daughters, Wanda Oster and Karen Reeves, at approximately 7:30 on the evening of March 28, 1991. The women immediately called the police.

A tire iron, which was later determined to have been used to force entry into the home, was found lying on the bedroom floor near the victim's body. A .22 caliber pistol which the victim kept on her night stand was missing. The bed on which the victim was lying was bloodstained, and it was later determined that she had six bullet wounds in her body. There were bullet wounds in the victim's forearms as though she were attempting to shield herself. Another bullet wound entering at her knee in an upper direction had been fired from some distance away. The wounds were inflicted by .22 caliber bullets, the same as might have been fired from the victim's missing gun. There was no gunpowder residue on the victim's hands.

During the investigation, the police learned that appellant had become very angry at the victim when he accused her of inducing her daughter, Dottie Wills, to obtain an abortion. At one time, appellant had stayed at the victim's home, but because of the tension between them, the victim had asked him to leave, which he did. However, he returned and engaged the victim in a heated argument concerning Dottie's abortion, claiming that he was the father of the aborted child.

The victim's daughters told the police that appellant had threatened to kill one of them. Following the death of the victim, appellant went to the apartment of Teresa Owens where he stayed the remainder of the night. The following day, shortly before noon, the police officers arrived at Owens' apartment and asked her if appellant was inside. She at first told them that he was not. However, upon further questioning, she admitted that he was inside.

The officers testified that when they were informed by Owens that appellant in fact was in the apartment they drew their guns and ordered appellant to surrender, which he did. When the officers determined that no one else was in the apartment and that appellant was unarmed, they put away their guns, proceeded to question him, and then asked him if he would come to the police station to answer further questions. He stated that he would come to the police station and indicated that he in fact was on his way to the station since he and Owens had been informed that he was a suspect in the killing. Appellant then, although not under arrest, voluntarily went to the police station where over a period of time he gave three successive statements concerning his involvement in the crime.

■ Appellant claims the trial court erred in instructing the jury that they could infer the burglary element of specific intent to commit a felony from the time, force, and manner of entry. Appellant contends this is an incorrect statement of the law and misled the jury into believing that no other evidence of intent was necessary. In support of his position, appellant cites *Gebhart v. State* (1988), Ind., 531 N.E.2d 211; *Justice v. State* (1988), Ind., 530 N.E.2d 295 and *Gilliam v. State* (1987),

Ind., 508 N.E.2d 1270. It is true that those cases hold that the mere breaking alone does not constitute sufficient evidence to support a breaking with intent to commit a felony inside the premises and that there must be other evidence, direct or circumstantial, to support the allegation of intent to commit a felony.

In the cases above, the accused fled the scene before committing any act which could be interpreted as evidence of intent to commit a felony within the premises. It is true the court's instruction, if standing alone, would not be sufficient under the above cases. · However, when all of the instructions given in this case are examined, it is apparent that when taken together they instructed that it was necessary to show that appellant entered the premises with the intent to commit the crime of murder.

The evidence before the jury was that appellant had previously stated that he intended to "get" the victim, that he entered the premises in the wee hours of the morning by prying a door open with a tire iron, and that he carried the tire iron into the bedroom of the victim. He claims the victim grabbed her gun and in struggling with her for possession of the gun it discharged several times. He further explained that as he backed away from the victim he apparently stumbled on clothing on the floor causing the gun again to accidentally discharge striking the victim in the knee. The evidence in this case is abundant to support a finding by the jury that appellant in fact did enter the premises with intent to commit murder. We see no possibility that taking the instructions as a whole the jury could have been misled. There is no reversible error in the giving of the instruction.

■ We would further point out that the defendant did not object to the giving of this instruction; therefore, any possible error was waived. *Cox v. State* (1985), Ind., 475 N.E.2d 664; *see also* Ind.Crim. Rule 8(B). However, appellant argues that the error was fundamental and should lead to reversal for that reason. Fundamental error is error which is gross and blatant and gives rise to a clear and substantial potential for harm. *Nelson v. State* (1980), 274 Ind. 218, 409 N.E.2d 637. No such situation obtains in the case at bar.

■ Appellant claims the trial court erred in convicting and sentencing him for burglary, a Class B felony, that he in fact should have been sentenced for a Class C felony because in the court's instruction, the court failed to include the statement "dwelling" in defining burglary. In giving the instruction, the court quoted the exact language from the statute which defines burglary in general terms in all of its classes. The instruction included the statement "the building or structure of another, Flossie Hunt." Here again, even presuming the instruction ideally should have contained the word "dwelling," there was no possibility that the jury could have believed that the building entered was anything other than a dwelling.

All of the evidence submitted in this case concerning the nature of the building stated that it in fact was a dwelling. No issue was ever presented claiming it to be otherwise. Again, when taking the instructions as a whole, the charging information which was given as part of the instruction clearly states that appellant "did then and there break and enter into the dwelling of Flossie Hunt...."

The charging information in fact charged a Class A felony, and the jury returned a verdict accordingly. However, the trial judge voluntarily reduced the burglary charge to a Class B felony, correctly stating that since the death of the victim was used to establish the murder charge, it could not be used again to establish the burglary as a Class A felony. *See King v. State* (1988), Ind., 517 N.E.2d 383. The trial court did not err in sentencing appellant for burglary, a Class B felony.

Appellant contends his arrest was illegal because he was seized without a search warrant in the home of a friend. When the police officers went to the home of Teresa Owens to question appellant, she met them at the door and at first told them appellant was not in her home. However, upon fur-

ther questioning, she admitted that he was. At trial, she testified:

"Q: Did you subsequently tell them that Proctor was there?

A: Yeah, I told them he was there.

Q: And, did you let them in the apartment?

A: Yes."

■ Appellant claims the trial court erred in admitting his statements made to the police because they were the fruits of an illegal arrest. However, we first observe that appellant has waived this issue. In his motion to suppress this evidence, appellant claimed the statements were "not true, accurate, and correct statements" of what he told police and the State had not produced any tape recordings of his alleged statements. The court overruled the motion to suppress.

At trial, appellant made no objection when the State offered the first statement in evidence. When the second statement was offered, counsel for appellant stated:

"Your Honor, at this time the defendant would object to State's Exhibit '21' and any testimony pertaining thereto for the following reasons. First of all, we contend that this statement was not voluntarily and freely given by the defendant, Proctor Gray, secondly, we contend that as you know, we filed a motion to produce with the State of Indiana, tapes of these alleged confessions and the State of Indiana failed to supply us with those alleging that no tapes were in fact made, and thirdly, we would object on the grounds that these are not true and accurate transcripts of what Proctor Gray actually told the police on March 29th, 1990."

The court admitted the second statement and it was read to the jury.

When the State offered the third statement in evidence, counsel stated:

"Your Honor, defendant would object to State's Exhibit '25' for the reason that this statement was not voluntarily and freely given by the defendant, Proctor Gray, it was the result of improper influences and secondly, it is not a correct and accurate transcription of what Proctor Gray told the police on March 30th, 1990 at 9:30 a.m."

Appellant's third statement was admitted and read to the jury.

Appellant's questioning of the statements he made to the police on the basis that they had been obtained in an illegal arrest is raised for the first time in his brief in this Court. Not having been raised in the trial court, this ground is not available for the first time on appeal. *Benefiel v. State* (1991), Ind., 578 N.E.2d 338; *Jones v. State* (1989), Ind., 536 N.E.2d 267.

■ Even if we accept for the sake of argument that the issue is before this Court, appellant's contention nevertheless would fail. In the first place, appellant had no standing to challenge the entry of the officers into Owens' home where he was a casual guest. He did not reside there, and he in no way demonstrated that he had a legitimate expectation of privacy in the premises. *Livingston v. State* (1989), Ind., 542 N.E.2d 192. The premises were controlled solely by Owens who permitted the officers to enter.

Further, we would observe that appellant was not placed under arrest at that time, but when asked by the police if he would go to the police station for further questioning, he told them that he would and in fact was on his way at that time. By the time appellant made his statements to the police, he had been fully advised of his *Miranda* rights. There is no showing that his statements were in any way influenced by the confrontation with the police at Owens' home. The trial court did not err in admitting appellant's statements in evidence.

■ In his reply brief, appellant for the first time states that he was deprived of effective assistance of counsel at the trial level because his attorney failed to preserve his claim concerning his rights under the Fourth and Sixth Amendments to the United States Constitution. Appellant cannot raise an argument for the first time in his reply brief. *Boucher v. Exide Corp.* (1986), Ind.App., 498 N.E.2d 402. As previ-

ously stated in this opinion, even had the issue been raised it would have been to no avail; therefore, although improperly raised in the reply brief, we note the contention has no merit.

The trial court is affirmed.

SHEPARD, C.J., and KRAHULIK, JJ., concur.

DeBRULER and DICKSON, JJ., concur in result without separate opinion.