**In re J.L.T., A Child Alleged to be a Delinquent Child.**

**J.L.T., Appellant–Respondent,**

v.

**State of Indiana, Appellee–Petitioner.**

**No. 60A01–9803–JV–95.**

Court of Appeals of Indiana.

May 12, 1999.

Rehearing Denied July 23, 1999.

Michael K. Ausbrook, Bloomington, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RUCKER, Judge

After engaging in criminal mischief as a Class D felony,[1] an act that would be a criminal offense if committed by an adult,[2] J.L.T. was adjudicated a juvenile delinquent. He now appeals raising six issues for our review which we consolidate and rephrase as follows: 1) was the evidence sufficient to sustain the delinquency judgment; 2) was J.L.T. denied effective assistance of counsel; 3) did the trial judge engage in judicial misconduct thereby depriving J.L.T. of a fair trial; and 4) was the trial court's order of restitution erroneous.

We affirm.[3]

The facts most favorable to the judgment show that on March 27, 1997, J.L.T. and three of his friends went to a cemetery in Owen County, knocked over one headstone,

---

1. Ind.Code § 35-43-1-2(b).

2. Ind.Code § 31-37-1-2.

3. Appellant's petition for oral argument is hereby denied.

and damaged several others. The record shows that of a total of some thirty-five to forty headstones in the walled cemetery, approximately 90% were either broken or knocked over. Many of the headstones marked the graves of Owen County residents who had died before the turn of the century. The total damage was approximately $14,-000.00. Thereafter the State filed a delinquency petition with the juvenile court charging J.L.T. with criminal mischief. Following a July 23, 1997, fact-finding hearing, the juvenile court found the charge to be true and adjudged J.L.T. a delinquent. The court did not enter judgment on whether J.L.T.'s acts would have amounted to a Class D felony or a Class A misdemeanor if committed by an adult. Rather the court reserved the issue until the dispositional hearing which was held on September 3, 1997.[4] At that time the juvenile court determined that if committed by an adult J.L.T.'s acts would have been a Class D felony. J.L.T. was remanded to the custody of the Indiana Department of Correction and ordered to pay restitution in the amount of $9,333.00. This appeal followed. Additional facts are set forth below where relevant.

### I.

J.L.T. mounts a multi-prong attack challenging the sufficiency of the evidence. He contends for example that the testimony of the State's chief witness, one of his cohorts, lacked credibility. To underscore the point he directs our attention to comments made

by the trial court after both sides had presented closing arguments:

> [W]hat really upsets me about this situation on top of the fact that all of these gravestones got damaged, is that, you kids can't even do the right thing. You can't even be brave enough to do the right thing. You can't stand out there at the graveyard and pay respect to people who went on before you and not damage their graves. You can't respect someone's property and not damage some vacant house. *And to add insult to injury you can't even come in here and raise your right hand and tell the truth. And that applies to all three of you.*

R. at 312–13 (emphasis added). According to J.L.T., "the juvenile court specifically found that [J.L.T.'s cohort] had lied." Brief of Appellant at 16. Continuing with the lack of credibility assertion J.L.T. also points to the State's closing argument in which the deputy prosecutor commented "there is more lying that went on from that stand today than I've seen forever.... The fact of the matter is the damage[ ] occurred and it is up to you to evaluate this evidence, but this evidence stinks. It's terrible." R. at 308. According to J.L.T., given the prosecutor's comments, the prosecutor engaged in misconduct by proceeding with a fact-finding hearing rather than dismissing the delinquency petition altogether. He also complains that the only other evidence before the trial court implicating him in the charged offense was the hear-

---

4. In his reply brief J.L.T. challenges for the first time the subject matter jurisdiction of the juvenile court. Generally, an appellant cannot raise an argument for the first time in a reply brief. *Gray v. State,* 593 N.E.2d 1188, 1191 (Ind.1992). However, it appears that the question of subject matter jurisdiction can be raised at any time. *See, e.g., Greer v. State,* 685 N.E.2d 700, 703 (Ind.1997) ("Subject matter jurisdiction never can be waived, and can be raised at any step in the appeal process."). In any event J.L.T.'s argument is premised on the notion that Ind.Code §§ 31–37–13–2 and 31–37–13–5 require the juvenile court to make a finding for a specific class of felony at the same time the court makes a finding of delinquency. The argument continues that because the juvenile court did not determine that J.L.T.'s act of criminal mischief amounted to a Class D felony until the dispositional hearing, the court "lost the power to find [J.L.T.] delinquent at all." Reply Brief of Appellant at 4 (emphasis

in the original). Subject matter jurisdiction refers to the power of the court to hear and adjudicate a particular class of cases. *Putnam County Hosp. v. Sells,* 619 N.E.2d 968, 970 (Ind.Ct.App. 1993). The issue of subject matter jurisdiction is resolved by determining whether the claim involved falls within the general scope of authority conferred on the court by state constitution or by statute. *Id.* The relevant statutes in this case provide that the juvenile court has exclusive jurisdiction in proceedings in which a person under eighteen (18) years of age is alleged to have committed an act that would be a criminal offense if committed by an adult. *See* Ind.Code §§ 31–30–1–1(1) and 31–37–1–2. J.L.T. was under eighteen (18) years of age at the time the delinquency petition was filed, and the allegations therein satisfied the statutory pre-requisites. J.L.T.'s subject matter jurisdiction argument thus fails.

say testimony of the investigating officer. The record shows the officer questioned the four juveniles about the cemetery vandalism. The officer testified that one of the juveniles admitted his own involvement and told the officer that J.L.T. was also involved in damaging the headstones. This testimony was admitted without objection.

When reviewing a claim challenging the sufficiency of the evidence, our standard of review is well settled. We neither reweigh evidence nor judge witness credibility. *Matter of J.L.*, 599 N.E.2d 208, 212 (Ind.Ct.App. 1992), *trans. denied.* Rather, we examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence to support the conclusion of the trier of fact, we will not set aside the judgment. *Id.* We reject J.L.T.'s assertion concerning prosecutorial misconduct and the inference that nothing J.L.T.'s cohort had to say was worthy of consideration by the juvenile court. The record is clear that the cemetery sustained substantial damage. It is also clear and undisputed that J.L.T. and his cohorts were present when the damage occurred. Predictably, each of the juveniles attempted to minimize his own involvement while pointing the finger in the other direction. It is in this context that the prosecutor commented the "evidence stinks" and the trial court commented that neither of the juveniles was "tell[ing] the truth." However, it is precisely within the domain of the trier of fact to sift through conflicting accounts of events. Not only must the fact-finder determine whom to believe, but also what portions of conflicting testimony to believe. *Ryle v. State*, 549 N.E.2d 81, 83 (Ind.Ct.App.1990), *trans. denied.* That is exactly what the trial court did in this case.

In order to prove criminal mischief the State must show that a defendant: (1) recklessly, knowingly, or intentionally (2) damaged a cemetery or a facility used for memorializing the dead, (3) without the consent of the owner. Ind.Code § 35–43–1–2. The offense is ordinarily a Class A misdemeanor. However, it is a Class D felony if the pecuniary loss is between $250.00 and $2,500.00. *Id.* In this case the juvenile wit-

ness, about whom J.L.T. complains, testified among other things that he drove J.L.T. and two other teenagers to the cemetery, that he and J.L.T. knocked over one headstone, and that J.L.T. damaged other headstones. Standing alone this evidence was sufficient to prove elements one and two of a criminal mischief offense. Additional evidence revealed that J.L.T. did not have permission to damage the headstones and that the total loss equaled approximately $14,000.00. The evidence was sufficient to sustain the delinquency judgment.

## II.

Next J.L.T. contends he received ineffective assistance of counsel. In support he again complains of the alleged hearsay testimony of the police officer to which trial counsel did not object. He also points to counsel's closing argument wherein, according to J.L.T., counsel conceded J.L.T.'s guilt. In reviewing a claim of ineffective assistance of counsel, we initially presume that counsel's representation was within the wide range of reasonable professional assistance. *Nordstrom v. State*, 627 N.E.2d 1380, 1384 (Ind. Ct.App.1994), *trans. denied.* On appeal the defendant has the burden to rebut the presumption of competence with strong and convincing evidence. *Clark v. State*, 561 N.E.2d 759, 762 (Ind.1990). In order to prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate: 1) counsel's representation was deficient, and 2) the deficient performance so prejudiced the defendant as to deprive him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Barany v. State*, 658 N.E.2d 60, 65 (Ind.1995), *reh'g denied.*

Concerning the alleged hearsay, we have already determined that the in-court testimony of J.L.T.'s cohort along with other evidence properly introduced at the hearing was sufficient to sustain the court's delinquency adjudication. Thus, even assuming for the sake of argument only that trial counsel's representation was deficient for failing to object to hearsay testimony, J.L.T. cannot demonstrate that the deficient performance so prejudiced him that the was

deprived of a fair trial. As for J.L.T.'s assertion that trial counsel conceded his guilt during closing argument, we disagree. The record shows that counsel did say that "all four of them did it." R. at 311. The question is what did the statement mean? There is nothing in counsel's closing argument suggesting that he conceded that J.L.T. recklessly, knowingly, or intentionally damaged a cemetery or a facility used for memorializing the dead, without the consent of the owner causing a pecuniary loss of between $250.00 and $2,500.00. Rather, in the context of counsel's entire closing argument it is apparent that he was acknowledging that his client was present at the cemetery and damaged a single headstone but did so by accident. Indeed, J.L.T. took the stand in his own defense and gave the same account. Counsel attempted to minimize the conduct of his client by indicating during closing "I think you've heard an awful lot of lying. I do think though that [J.L.T.], of all the people has stood and told you more about the truth of what happened.... [W]hether or not he was involved to the extent that he says .. or whether or not he was involved to the extent that the State has charged him with .. the other [w]itnesses claim he was, I don't know...." R. at 310. This is hardly a concession of guilt. At most, in light of the evidence against J.L.T., it amounted to a strategy designed to persuade the juvenile court to reach an adjudication of delinquency based on a lesser included offense. Although it did not work, unsuccessful defense strategy does not necessarily indicate that the strategy was a poor one, nor does it indicate ineffective assistance of counsel. *Nuerge v. State,* 677 N.E.2d 1043, 1049 (Ind. Ct.App.1997), *trans. denied.* J.L.T.'s argument on this point fails.

### III.

■ J.L.T. next asserts that the "fact-finding hearing was unfair because the juvenile court, at the State's invitation, acted as a second prosecutor when it attempted to use the fact-finding process as an inquisitorial tool to extract a confession from [J.L.T.]" Brief of Appellant at 12. This bald and outrageous assertion, unsupported by the record, is entitled to no evaluation by this court. Suffice it to say a judge is presumed to be unbiased and unprejudiced. *Perry v. State,* 585 N.E.2d 715, 716 (Ind.Ct.App.1992). J.L.T. has not shown otherwise here.

### IV.

■ Finally J.L.T. complains the trial court erred in ordering him to pay restitution in the amount of $9,333.00. He argues that because the delinquency adjudication was based upon criminal mischief as a Class D felony, the maximum amount of restitution could not exceed $2,500.00. J.L.T. is mistaken. The pecuniary loss a victim suffers as the result of criminal mischief determines the level of the offense for which the offending party may be charged. However, the level of the offense has no bearing on the amount of restitution the court may impose. An order of restitution is a matter within the trial court's discretion, and we reverse only upon a showing of abuse of that discretion. *Smith v. State,* 655 N.E.2d 133, 134 (Ind.Ct.App. 1995), *trans. denied.* An abuse of discretion occurs when the trial court's determination is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Matter of L.J.M.,* 473 N.E.2d 637, 640 (Ind.Ct.App. 1985). Indiana Code § 31-37-19-5 provides that a juvenile court may order a juvenile "to pay restitution if the victim provides reasonable evidence of the victim's loss, which the child may challenge at the dispositional hearing." A victim includes a person who is shown to have suffered an injury, harm or loss as a direct and immediate result of the criminal acts of a defendant. *Roach v. State,* 695 N.E.2d 934, 943 (Ind.1998). The record shows that Robert Schouse owns the property on which the cemetery is located. At the fact-finding hearing Mr. Schouse testified that based on the cost of a headstone that he had purchased for his wife two years earlier, and based on the destruction of the headstones in the cemetery, he estimated the cost of repair or replacement of the headstones at approximately $14,000.00. J.L.T. did not challenge the amount of the loss either at the fact-finding hearing or the dispositional hearing. Because the evidence revealed that

J.L.T. caused more damage than his cohorts, the juvenile court ordered J.L.T. to pay two thirds of the total amount. The court's order of restitution is not clearly against the logic and effect of the facts and circumstances before the court. We find no error on this issue.

Judgment affirmed.

DARDEN, J., and SULLIVAN, J., concur.