## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 27 2018, 10:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Devin Bays,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 27, 2018

Court of Appeals Case No.
28A05-1711-CR-2702

Appeal from the Greene Superior Court

The Honorable Dena A. Martin, Judge

Trial Court Cause No.
28D01-1706-F6-113

**Friedlander, Senior Judge.**

[1] Devin Bays appeals his convictions of resisting law enforcement and theft. We affirm.

[2] In May of 2017, Nathan Kimmel allowed Devin Bays to store his motorcycle in Kimmel's basement because it was raining. Bays put his motorcycle next to Kimmel's yellow Suzuki RNZ450 motorcycle in the basement, and the two agreed that Bays would return later to retrieve his motorcycle. Approximately three days later, Kimmel sent a text message to Bays indicating that Bays needed to retrieve his motorcycle, that Kimmel would be at work, and that the basement would be unlocked. When Kimmel returned from work, Bays's motorcycle was gone; Kimmel's motorcycle had been knocked over; and "there [were] tools everywhere, gas everywhere." Tr. Vol. II, p. 207. When Kimmel contacted Bays, Bays denied that he had removed his motorcycle from the basement and told Kimmel, "you owe me a bike." Id. at 208. On May 26, 2017, Kimmel discovered that his motorcycle was missing from the basement.

[3] On June 2, 2017, Greene County Sheriff's Deputy Harvey Holt received a call to assist in locating a stolen motorcycle, with Bays suspected as the thief. While parked at an intersection near Bays's residence, Deputy Holt, who knew Bays and what he looked like, became aware of a motorcycle approaching. The motorcycle was similar to the stolen one that Deputy Holt was attempting to locate, and he immediately identified the rider, who was wearing a helmet without a visor that showed his entire face, as Bays. Deputy Holt activated his lights, Bays quickly accelerated away, and Deputy Holt gave chase for approximately three minutes before abandoning his pursuit. Later that day, working with information obtained from Bays's cousin Shylar Vincent, Deputy Anthony Pope located a yellow motorcycle near where Deputy Holt had lost

sight of Bays. The motorcycle was in a ditch near the end of a road and appeared to be hidden. A check of the motorcycle's vehicle identification number confirmed that it was Kimmel's missing motorcycle.

[4] On June 12, 2017, the State charged Bays with Level 6 felony resisting law enforcement, Level 6 felony theft, and Class C misdemeanor reckless driving. Bays proceeded to jury trial on September 9, 2017. During voir dire, the State engaged the venire in a line of questioning concerning memory and ability to recall details and commented that one of the deputies testifying at trial would not be able to remember what Bays was wearing but would be able to remember his face. The prosecutor commented that the deputy was "not going to lie" about this lack of memory. *Id.* at 37. Later, the prosecutor questioned the venire about their thoughts regarding the crime of receiving stolen property. Following voir dire but before opening statements, the trial court granted a motion in limine that prohibited Deputy Holt from testifying that he was familiar with Bays as a result of prior criminal contacts. While the State was examining and impeaching Sasha Vincent regarding her bias in favor of Bays, the prosecutor asked her whether she wanted to see Bays get in trouble. Sasha did not answer the question but did say that Bays had been in trouble many times.

[5] The jury found Bays guilty of resisting law enforcement and theft as charged but not guilty of reckless driving. On October 18, 2017, the trial court sentenced Bays to two years of incarceration for resisting law enforcement and two years for theft, to be served consecutively.

# 1. Prosecutorial Misconduct

[6] Bays contends that the State committed prosecutorial misconduct by improperly questioning the venire during voir dire and by violating the motion in limine regarding prior bad acts by Bays. When reviewing a claim of prosecutorial misconduct, appellate courts must determine whether the prosecutor engaged in misconduct and, if so, whether the misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Cooper v. State*, 854 N.E.2d 831 (Ind. 2006). "The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (citing *Cooper*, 854 N.E.2d at 835). To preserve a claim of prosecutorial misconduct, the defendant must object and request an admonition of the jury at the time the alleged misconduct occurs. *Neville v. State*, 976 N.E.2d 1252 (Ind. Ct. App. 2012), *trans. denied*. Failure to at least object and request an admonition results in waiver. *Jerden v. State*, 37 N.E.3d 494 (Ind. Ct. App. 2015).

[7] Bays acknowledges that he did not object to any of the alleged misconduct of which he now complains but attempts to avoid the effects of his waiver by claiming that fundamental error occurred. A failure to object may avoid default if the misconduct at issue constitutes fundamental error, meaning it must "'make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process [and] present an undeniable and substantial potential for harm.'" *Booher v. State*, 773 N.E.2d 814, 817 (Ind.

2002) (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)). A finding of fundamental error is essentially a conclusion that the trial court erred by failing to sua sponte correct an error. *Brewington v. State*, 7 N.E.3d 946 (Ind. 2014). To succeed on an appellate claim of prosecutorial misconduct presented in the absence of a contemporaneous trial objection, the defendant must establish not only the grounds for prosecutorial misconduct but also the additional grounds for fundamental error. *Booher*, 773 N.E.2d 814; *see also Baer v. State*, 942 N.E.2d 80, 99 (Ind. 2011) (noting it is "highly unlikely" to prevail on a claim of fundamental error relating to prosecutorial misconduct).

## A. Vouching

[8] Bays asserts that fundamental error occurred due to repeated vouching for witnesses by the prosecutor. It is inappropriate for a prosecutor to make an argument which takes the form of personally vouching for a witness. *Lainhart v. State*, 916 N.E.2d 924 (Ind. Ct. App. 2009). "A prosecutor may comment on the credibility of the witnesses only if the assertions are based on reasons which arise from the evidence." *Id.* at 938.

[9] Bays argues that the prosecutor impermissibly vouched for Deputy Holt by saying the following to the venire during voir dire:

> Now, do you think you could tell me what the people are wearing that are sitting long that back wall if you look back there and glance back up here? Do you think you could tell me 2 hours later what the people were wearing that are sitting along that back wall? Could you tell me what your significant others were wearing this morning when they left the house? You see

what I'm getting at. Right? We pay attention to faces but you don't always notice the other details. Right? The officer is not going to lie to you. He is going to sit up there and say I don't remember what the kid was wearing. Right? If he was going to make something up, he could very well make something up and say he was wearing a cutoff and specific clothing. He is not going to remember what color helmet Mr. Bays was wearing I don't think. Does that make you guys think he is lying though just because doesn't remember those other details we talked about? What do you think Number 63?

Tr. Vol. II, pp. 36-37. During closing argument, the prosecutor also told the jury Deputy Holt "has no reason to lie." *Id.* at 239.

[10]     Neither of these occurrences amount to impermissible vouching. The prosecutor's voir dire comments and questions, coming as they did during a discussion concerning what sort of details a person is likely to recall and what sort a person is likely to forget, were not the expression of an opinion on Deputy Holt's general credibility. In other words, the prosecutor was not opining that Deputy Holt would never lie about anything, only acknowledging that he expected Deputy Holt would not be able to recall certain details about his sighting of Bays on the yellow motorcycle. The prosecutor's comments did not amount to error, much less fundamental error.

[11]     As for the prosecutor's comment that Deputy Holt had no reason to lie about seeing Bays on the motorcycle, this is clearly nothing more than a reference to earlier argument grounded in the evidence:

> You heard from Harvey Holt. Twenty years as both the Greene County Sheriff's Deputy and it's an MP he said some other word

for it. He was an Air Force Police Officer. You really think he is going to throw that career away to lie about someone running from him on a dirt bike in the middle of Greene County in the middle of nowhere? Does that really make sense? Did he any reason to come in here and lie to you about whether or not he saw Devin Bays? If he was going to lie, don't you think he would have had oh well he had this type of a helmet on and these type of clothes on and I remember it all as clear as day. No, he saw his face, he didn't remember a whole lot else and then he chased him for a while. It wasn't a perfect story. If it was a made up story you know when our kids lie to us and people like that its usually a little too perfect. You know what I mean?

*Id.* at 233-34. The prosecutor was not vouching for Deputy Holt but, rather, arguing that the evidence supported an inference that his testimony was truthful. Again, Bays has failed to show error, much less fundamental error.

## B. Voir Dire

[12] Bays also claims that the prosecutor committed misconduct by saying the following during voir dire:

> How about being in possession of stolen property, do you think that should be a crime, Number 328? […] Alright, we don't want somebody to be guilty of like you go buy a gun or something from someone and it ends up being stolen, that is a different story. Right? […] But it[']s different if you happen to know the guy who stole it and you're in possession of it, that should be a crime. Right?

*Id.* at 55-56. Bays argues that the above questions suggest that the jury could convict Bays if it found that he simply possessed the motorcycle knowing that it was stolen. As it happens, in order to convict Bays of theft in this case, the jury was required to find Bays's knowing or intentional exertion of unauthorized

control over the motorcycle with intent to deprive the owner of the vehicle's value or use. Ind. Code § 35-43-4-2.5(b) (2014). To the extent that these two concepts might be incompatible, the jury was instructed correctly on the elements of theft as charged in this case, and Bays points to no indication that it did not follow that instruction. *See, e.g.*, *Chandler v. State*, 581 N.E.2d 1233, 1237 (Ind. 1991) ("[W]hen the jury is properly instructed, it may be presumed on appeal that they followed such instruction.").

## C. Examination of Sasha Vincent

Finally, Bays contends that the State violated a motion in limine barring testimony from Deputy Holt regarding Bays's prior contacts with law enforcement. Deputy Holt did not, in fact, offer any such testimony, nor were any questions asked that were likely to elicit such testimony from Deputy Holt. During the prosecutor's examination of Sasha Vincent, however, who denied seeing Bays on a yellow motorcycle on the day in question despite acknowledging that she had earlier told police that she had, the following exchange occurred:

> Q [...] I have a couple of more questions. As we talked about earlier, you're related and friends with [Bays] through marriage. Is that right?
>
> A Yeah.
>
> Q You don't want to see him get in trouble do you?
>
> A I mean he has been in trouble I don't know how many times.
>
> Q You don't want to see him get in trouble do you is my question?

A      I don't care.  I have my own stuff to worry about.

Q      You're not trying to protect him.

A      No.

Q      Thank you.

Tr. Vol. II, p. 198.  Whatever prejudicial effect Sasha's testimony about Bays's previous troubles may have had, it was not elicited by anything the prosecutor did.  Quite simply, the testimony was flatly unresponsive to the prosecutor's specific question, prompting the prosecutor to repeat it.  There is nothing in the record to suggest that the prosecutor should or could have known that Sasha would testify the way she did.  Bays has failed to establish any prosecutorial misconduct at all, much less any amounting to fundamental error.

## 2.  Sufficiency of the Evidence

[14]    When reviewing the sufficiency of the evidence, we neither weigh the evidence nor resolve questions of credibility.  *Jordan v. State*, 656 N.E.2d 816 (Ind. 1995).  We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict.  *Id*.  If from that viewpoint there is evidence of probative value from which a reasonable trier of fact could conclude that Bays was guilty beyond a reasonable doubt, we will affirm the conviction.  *See Spangler v. State*, 607 N.E.2d 720 (Ind. 1993).  "[I]t is precisely within the domain of the trier of fact to sift through conflicting accounts of events.  Not only must the fact-finder determine whom to believe, but also what portions of conflicting testimony to believe."  *In re J.L.T.*, 712 N.E.2d 7, 11 (Ind. Ct. App. 1999), *trans. denied*.

[15] Bays's challenge to his theft and resisting law enforcement convictions is limited to his claim that the State produced insufficient evidence that he was the person Deputy Holt saw riding the yellow motorcycle. It is well-settled that "[a] single eyewitness' testimony is sufficient to sustain a conviction." *Emerson v. State*, 724 N.E.2d 605, 609-10 (Ind. 2000). Deputy Holt testified that he knew Bays previously and what he looked like and immediately identified the rider of the motorcycle as Bays. This is sufficient to prove identity. Bays notes that no physical evidence connects him to the motorcycle and points to several alleged reasons to doubt the veracity of Deputy Holt's identification. Bays's arguments amount to nothing more than invitations to reweigh the evidence, which we will not do. *See Jordan*, 656 N.E.2d at 817.

[16] Judgment affirmed.

Najam, J., and Robb, J., concur.