## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 14 2021, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander L. Hoover
Law Office of Christopher G. Walter, P.C.
Nappanee, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Matthew J. Goldsmith
Angela N. Sanchez
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tyson Daishan Lamonte King,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

January 14, 2021

Court of Appeals Case No.
20A-CR-1605

Appeal from the
Marshall Superior Court

The Honorable
Dean A. Colvin, Judge

Trial Court Cause No.
50D02-1909-CM-961

**Kirsch, Judge.**

[1] Tyson Daishan Lamonte King ("King") appeals his conviction for driving while suspended[1] as a Class A misdemeanor. King raises one issue for our review: whether the evidence was sufficient to support his conviction.

[2] We affirm.

## Facts and Procedural History

[3] On September 10, 2019, Plymouth Police Department Officer David Finn ("Officer Finn") ran a random license plate check on a vehicle while conducting routine traffic control. *Tr. Vol. 2* at 5-7. Officer Finn saw that the vehicle's license plate check showed that the vehicle's registered owner had a suspended license. *Id.* at 7. Officer Finn initiated a traffic stop, determined that the driver was King and informed King that he was stopped because his license was suspended. *Id.* at 7-8. King told Officer Finn that "his license was suspended because of child support issues" but that King had been "advised that his license should be valid." *Id.* at 8. Officer Finn had dispatch confirm that King's license was suspended, and King also checked the status of his license on the Indiana Bureau of Motor Vehicles ("BMV") website from his phone while Officer Finn was contacting dispatch. *Id*. King confirmed that the BMV's website showed that his license was suspended, and Officer Finn issued King a

[1] *See* Ind. Code § 9-24-19-2.

ticket and a summons to appear for driving while suspended. *Id.* at 8-9; *Appellant's App. Vol. 2* at 13.

[4] On September 13, 2019, the State charged King with driving while suspended as a Class A Misdemeanor. *Appellant's App. Vol. II* at 3-4, 13, 15. On August 5, 2020, the trial court held a bench trial. *Id.* at 7. At the bench trial, Officer Finn identified King in open court. *Tr. Vol. 2* at 7-8, 10-11. Officer Finn was cross-examined and indicated that King did not believe his license was suspended before King independently confirmed on the BMV website that his license was suspended. *Id.* at 9. Officer Finn also stated that King told him he "had spoken with his lawyer and his lawyer had basically told him that he was allowed to drive." *Id.* at 9-10. The prosecutor sought to admit a certified copy of King's driving record from the BMV, which the trial court admitted without any objection from King. *Id.* at 12. King's driving record showed that the notice of his license suspension for delinquent child support was mailed to him on August 6, 2019, and his license was listed as suspended from September 5, 2019 through September 25, 2019. *Ex. Vol. 1* at 5. King's driving record also showed that he was mailed two previous notices that his license was suspended for delinquent child support; one notice of license suspension was mailed on July 31, 2018[2] and the other notice of license suspension was mailed on November 6, 2018. *Id.*

---

[2] We note that this court reversed King's conviction for Class A misdemeanor driving while suspended with respect to the July 31, 2018 notice of license suspension for which his license was suspended effective August

[5] King testified that Officer Finn pulled him over on September 10, 2019, and King indicated that he believed his driver's license should not have been suspended. *Tr. Vol. 2* at 13. King stated that "if I knew I was suspended, I never would've checked my phone" for his driver's license because he believed his driver's license was "still valid" and that he was "shocked" to see that his driver's license was suspended because he had expected the BMV website to show his driver's license as valid. *Id.* at 14. King's counsel sought to admit three exhibits related to child support from King's divorce case in the Marshall Circuit Court under Cause Number 50C01-1105-DR-103 ("Cause No. 103"), and the trial court admitted the exhibits over the prosecutor's objection.[3] *Id.* at 15-16; *Ex. Vol. 1* at 11-15. King testified that after he was pulled over on September 10, 2019, he went to a September 25, 2019 hearing regarding the child support issues in Cause No. 103. *Tr. Vol. 2* at 16-17. On September 25, 2019, the trial court issued an order granting the motion of King and his ex-wife to offset child support arrears and authorized the clerk of the circuit court to release the judgment against King for child support in Cause No. 103. *Ex. Vol. 1* at 14-15. On cross-examination, King acknowledged that when he was

---

30, 2018 and expired on October 24, 2018. *King v. State*, 153 N.E.3d 324, 325-26 (Ind. Ct. App. 2020), *trans. denied.* In that appeal, we addressed whether King's suspension had already expired when he was pulled over and held that "King's driver's license was not suspended when he was pulled over at approximately 11:30 a.m. on October 24, 2018, because his suspension expired at 12:00 a.m. on October 24, 2018." *Id.* at 330.

[3] King's first exhibit, a handwritten CCS minute entry from Cause No. 103 dated May 11, 2018, was an agreement between King and his ex-wife regarding child support. *Ex. Vol. 1* at 11. His second exhibit was an agreed motion to offset arrears related to child support in Cause No. 103 which was filed with the trial court on September 25, 2019. *Id.* at 12-13. His third exhibit was a release of lien and satisfaction of judgment and the trial court's order granting the agreed motion to offset arrears in Cause No. 103 dated September 25, 2019. *Id.* at 14-15

stopped on September 10, 2019, the BMV showed his driver's license as suspended. *Id.* at 18.

[6]     Cynthia Sue Pucciarelli ("Pucciarelli"), a Marshall County child support case worker who was assigned to King's case, also testified. *Id.* at 21. She indicated that she did not receive the order offsetting child support arrears in Cause No. 103 until after the trial court entered it on September 25, 2019. *Id.* at 23. Pucciarelli also stated that King's license was suspended because of unpaid child support. *Id.* at 23-24. On cross-examination, Pucciarelli engaged in the following exchange with King's counsel:

> Q  The 2018 -- I want to say that was May -- this -- he was in arrears, Mr. King, correct?
>
> A  Uh--huh.
>
> Q  And at that point, he was not -- nothing was filed against Mr. King for suspending his license, correct?  From Marshall County anyhow?
>
> A  I cannot give you the exact day, but I do know that there were issues and I actually had to reinstate his license back in 2018.
>
> Q  Okay.
>
> A  And I put in a payment plan at that time.
>
> Q  Okay.  And I noticed the suspension that the BMV has in the BMV record was, he was not suspended until September 5th, 2019.

A   He put in a payment plan with me December of 2018.  He did not pay --

Q   For how much?

A   $400 a month, on the arrears.  He did not pay; thus, he was automatically suspended again, for our suspension in April 2019.

Q   So if he was . . . automatically suspended in 2019, in April, that would have came [sic] from your office?

A   It was due to the fact that I put a payment plan into place, $100 a month to pay on the arrears.  He did not pay it, so the -- so I guess the state would automatically suspended [sic] him, because he did not --

Q   So he could have a suspension staring April 2019 for failure to pay child support, in the Marshall County case?

A   Again. Yeah.

*Id.* at 25-26.

[7]   The trial court also engaged in the following exchange with Pucciarelli:

THE COURT:  Before I have you step down, let me make sure that I understand that the suspension that was in place by the driver's license record that the State's offered showing he was suspended on September 5th and that was the action of . . . the officer in this particular case, was one that was initiated on April of 2019?

THE WITNESS:  Correct.

THE COURT: And that was for nonpayment of an agreed disposition of the past due child support, correct?

THE WITNESS: Correct.

THE COURT: Okay. Is there any time between that date, that was issued in April of 19 in which he had become -- paid his child support in full, to the extent that the suspension should have been lifted?

THE WITNESS: No. Because there was no -- his arrearage was still there.

THE COURT: The agree -- it was still under the April agreement but he had not completed paying the arrearage in his child support?

THE WITNESS: Correct.

THE COURT: So the bureau would still consider that as being non-compliant with the order; therefore, not reinstating him? The agreement, I shouldn't say order, because it was an agreement.

THE WITNESS: Okay. He had a suspension. He did not pay on his arrears, so it was not reinstated.

THE COURT: Okay. All right.

*Id.* at 28-29.

[8]     At the conclusion of the bench trial, the trial court found King guilty as charged and sentenced him that same day to 365 days executed in the Marshall County Jail and suspended the entire 365 days to probation. *Tr. Vol. 2* at 36; *Appellant's App. Vol. 2* at 43. King now appeals.

## Discussion and Decision

[9]     King argues that the State presented insufficient evidence to convict him of driving while suspended as a Class A misdemeanor. When we review the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). Rather, we will affirm a conviction if we find that any reasonable factfinder could find a defendant guilty beyond a reasonable doubt when considering all the facts and inferences that favor the conviction. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). The evidence need not exclude every reasonable hypothesis of innocence, but it must support a reasonable inference of guilt to support the verdict. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007). "[I]t is precisely within the domain of the trier of fact to sift through conflicting accounts of events. Not only must the fact-finder determine whom to believe, but also what portions of conflicting testimony to believe." *Atwood v. State*, 905 N.E.2d 479, 484 (Ind. Ct. App. 2009) (quoting *In re J.L.T.*, 712 N.E.2d 7, 11 (Ind. Ct. App. 1999), *trans. denied*.), *trans. denied*.

[10]    King was convicted under Indiana Code section 9-24-19-2, which provides that, an individual who:

(1) knows that the individual's driving privileges, driver's license, or permit is suspended or revoked; and (2) operates a motor vehicle upon a highway less than ten (10) years after the date on which judgment was entered against the individual for a prior unrelated violation of section 1 of this chapter . . . commits a Class A misdemeanor.

[11] King challenges only whether the State presented sufficient evidence that he had knowledge that his license was suspended. King appears to argue that he successfully rebutted the presumption that he knew that his license was suspended, contending that the information in his certified driving record is insufficient to establish his knowledge that his driver's license was suspended. He asserts that Pucciarelli's testimony did not establish that his license was ever suspended in April 2019, and that without corroborating testimony King's certified driving record, standing alone, does not establish that he had knowledge of the suspension.

[12] Indiana Code section 9-24-19-8 establishes a rebuttable presumption of knowledge of a license suspension, and it provides:

> Service by the bureau of motor vehicles of a notice or an order suspending or revoking an individual's driving privileges by mailing the notice or order by first class mail to the individual at the last address shown for the individual in the records of the bureau establishes a rebuttable presumption that the individual knows that the individual's driving privileges are suspended or revoked, as applicable.

In *Spivey v. State,* 922 N.E.2d 91, 93-94 (Ind. Ct. App. 2010), this court explained that a driving record indicating the mail date of a notice of

suspension is sufficient to establish the rebuttable presumption the defendant knew of his license suspension, as "the trier of fact may reasonably infer that the notice was sent via first-class mail" because "it is common knowledge that the general method of mailing a letter is through the United States Postal Service via first-class mail." We held that the evidence need not specifically indicate a notice of suspension was sent by first class mail. *Id.*

[13] Here, King's certified driving record shows that a notice of suspension was mailed to King on August 6, 2019 and that his driver's license was suspended from September 5, 2019 through September 25, 2019. *Ex. Vol. 1* at 5. On appeal, King does not specifically argue that he never received the notice that was sent on August 6, 2019. At trial, Officer Finn testified that he pulled King over on September 10, 2019 because King's license was suspended and that King told Officer Finn "his license was suspended because of child support issues" but that King said he had been "advised that his license should be valid." *Tr. Vol. 2* at 8. Officer Finn confirmed through dispatch that King's license was suspended, and King himself independently confirmed that the BMV's website showed that his license was suspended. *Id.* at 8-9. While King testified that he was "shocked" to see that his license was suspended when he was pulled over on September 10, 2019, because he believed his May 11, 2018 agreement with his ex-wife regarding child support addressed his child support arrearage under Cause No. 103, it was not until the trial court's September 25, 2019 order in Cause No. 103 offsetting King's child support arrearage was issued, that the issue of his arrearage was resolved. *Id.* at 14, 16-20; *Ex. Vol. 1* at

11-15. Before King was stopped on September 10, 2019 for a suspended license, King's driving record also showed that he was mailed two notices that his license was suspended for delinquent child support after the May 11, 2018 agreement in Cause No. 103 with his ex-wife; one notice of license suspension was mailed on July 31, 2018 and the other notice of license suspension was mailed on November 6, 2018. *Ex. Vol. 1* at 5, 11. The trier of fact could have reasonably concluded that King did not rebut the presumption that he had knowledge his license was suspended when he was pulled over on September 10, 2019.

[14] As to King's contention that Pucciarelli's testimony shows that he was unaware of his license suspension, we acknowledge that Pucciarelli's trial testimony does appear to confuse dates and the reasons for King's numerous license suspensions that had occurred since May 2018. *See Tr. Vol. 2* at 21-29. Pucciarelli testified that King's license was suspended in April 2019 because he failed to remain current with a December 2018 child support payment plan. *Id.* at 26. We note that while King's driving record shows a license suspension for failure to appear for a seatbelt violation in Fulton County, which resulted in a license suspension from April 12, 2019 through April 26, 2019, it does not show a license suspension for failure to pay child support in April 2019. *Ex. Vol. 1* at 5. King overlooks that Pucciarelli also testified that "[h]e had a suspension. He did not pay on his arrears, so [his driver's license] was not reinstated." *Tr. Vol. 2* at 29. King did not rebut the presumption that he knew his license was suspended, and his arguments to the contrary with respect to Pucciarelli's

testimony are a request for us to reweigh her testimony and to reassess her credibility, which we cannot do. *See McHenry*, 820 N.E.2d at 126. The evidence presented at trial was sufficient to show that King knew his license was suspended.

Affirmed.

Bradford, C.J., and May, J., concur.